**Karen TUTTLE, Plaintiff–Appellee,**

v.

**COMBINED INSURANCE CO., et al., Defendants–Appellants.**

No. 04–16441.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 2006.

Filed March 20, 2007.

Kleinfeld, Circuit Judge, filed dissenting opinion.

Thornton Davidson, Esq., Fresno, CA, for Plaintiff–Appellee.

Michael E. Caples, Esq., Michael S. Ward, Fitzgerald Abbott & Beardsley, Oakland, CA, for Defendants–Appellants.

Before: KLEINFELD and THOMAS, Circuit Judges, and LEIGHTON,* District Judge.

* The Honorable Ronald B. Leighton, United States District Judge for the Western District

## MEMORANDUM **

### I.

Michael Caples, Combined Insurance's attorney, appeals the district court's order sanctioning him $5000 for violating California State Bar Rules of Professional Conduct Rule 5–310 by causing a person to leave the jurisdiction of the court and become unavailable as a witness.

### II.

We review a district court's imposition of sanctions for an abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *In re Keegan Management Co.*, 78 F.3d 431, 436 (9th Cir.1996). We will reverse a district court's factual findings as to whether an attorney acted recklessly or in bad faith only if they are clearly erroneous. *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000). "So long as the district court's view of the evidence is plausible in light of the record viewed in its entirety, it cannot be clearly erroneous, even if the reviewing court would have weighed the evidence differently had it sat as the trier of fact." *S.E.C. v. Rubera*, 350 F.3d 1084, 1093–94 (9th Cir.2003).

### III.

The salient facts are as follows:

Karen Tuttle sued her former employer, Combined Insurance Company, for sexual harassment. Tuttle personally contacted Marti Detrick, a Combined Insurance employee, and asked her to testify at trial. Tuttle arranged and paid for Ms. Detrick's travel to the trial in Fresno.

Two days before Ms. Detrick's scheduled testimony, Caples contacted her and arranged a meeting with Combined Insurance's legal team in order to "prepare her testimony for trial." Elliot Hudson, Combined Insurance's corporate counsel, participated in the meeting. During the meeting, Hudson and Caples discussed the propriety of Tuttle's contact with Ms. Detrick. Hudson informed Ms. Detrick that he could order her not to testify and to return home against her will, but that it was up to her whether to leave or stay. Caples reiterated that she was free to decide whether or not to stay. Caples also informed Ms. Detrick that Tuttle behaved improperly in flying Ms. Detrick to Fresno to testify, that she should do the right thing, and that her testimony was likely inadmissable as hearsay.

Ms. Detrick left the meeting and subsequently informed Hudson that she wanted to return home—Combined Insurance Company made the necessary arrangements. She later testified that she left Fresno because she was confused about what to do and partially feared for her job. She also stated that she felt pressured by "the corporate attorneys" not to testify.

The district court sanctioned Caples and Combined Insurance $5000 each, finding that "their words and conduct directly or indirectly caused Ms. Detrick to leave the jurisdiction for the purpose of making her unavailable as a witness in the action." Caples appealed his sanction.

### IV.

California State Bar Rules of Professional Conduct Rule 5–310 prohibits a bar member from " ... advis[ing] or directly or indirectly caus[ing] a person to secrete

---

of Washington, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the

courts of this circuit except as provided by Ninth Circuit Rule 36–3.

himself or herself or to leave the jurisdiction of a tribunal for the purpose of making that person unavailable as a witness herein."

Here, the district court did not abuse its discretion when it determined Caples, at least indirectly, caused Ms. Detrick to leave the jurisdiction. To be sure, it was Hudson, not Caples, who more directly pressured Ms. Detrick by saying that he could order her home against her will. Caples, however, told Ms. Detrick that she should not have been brought in for trial, that she should do the right thing, and that her testimony was likely inadmissible as hearsay. Due to these facts, the district court was "not convinced by counsel's testimony that they did not intend to make Ms. Detrick unavailable." The district court was within its discretion on both its credibility determination and its finding that Caples's statements indirectly induced Ms. Detrick to leave the jurisdiction.

**AFFIRMED.**

KLEINFELD, Circuit Judge, dissenting.

I respectfully dissent.

The magistrate judge imposed separate sanctions on Michael Caples, and on Combined Insurance. The theory of the sanction was that Caples and Combined's house counsel, Michael Hudson, pressured plaintiff's witness, Martha Detrick, to make herself unavailable for trial.

The case went to trial without Detrick, so one would expect plaintiff's counsel, who lost at trial, vigorously to support this sanction for chasing away his witness. That has not happened. The unsuccessful plaintiff has not filed a brief supporting the sanction on Caples. Combined Insurance has not appealed.

The plaintiff, suing her employer, had arranged for a friend who was a fellow employee to fly to the trial location and testify for her. Caples and Hudson, Combined's house counsel, were angry and upset. They thought something tricky was going on. The sanction arises out of their interview with the witness on the eve of trial.

Caples, like any conscientious lawyer, sought to interview the witness. Lawyers are supposed to interview witnesses before trial. We have frequently, in the criminal context, held that it is ineffective assistance of counsel to fail to interview a witness. Caples mistakenly saw himself as Detrick's lawyer as well as the company's, because she was an employee of the company, but that mistaken view does not make it wrong for him to interview the witness.

The magistrate judge did not find that Caples told the witness to go back home. Had there been that finding, then we would review it for clear error. Hudson, Combined's house counsel, told the witness that he could tell her to go home (as her employer's lawyer), but would not.

Caples told her that he thought her testimony would be inadmissible hearsay anyway (evidently she lacked first hand knowledge and the plaintiff had wanted her to testify about what she had heard), but that she was free to stay or go, whatever she thought was the right thing. Detrick testified that Hudson and Caples told her that "it wouldn't be held against you in your employment if you stayed." "[T]here'd be no adverse consequences to you from the company." It is hard to imagine what else they could say to avoid making her feel pressured to leave.

The witness decided that the right thing was to go home. The magistrate judge imposed the sanction because Detrick testified that she felt "pressured," and that she "wondered if staying and testifying

might adversely affect her job." But the magistrate judge did not make any finding that Caples or Hudson told her that she should go home, or that testifying would affect her job. The record shows without contradiction that they repeatedly told her that she was free to stay and testify, without adverse job consequences. The magistrate judge found only that the lawyers were angry and that their "anger was revealed in such a way that Ms. Detrick felt pressured."

This record does not support the sanction against Caples. He was doing his duty by interviewing a witness. There is nothing wrong with lawyers feeling angry during trial preparation. A lawyer cannot properly be sanctioned for his feelings. As for revealing his anger, it is hard to imagine how an emotion of anger could be successfully masked from a perceptive individual.

Witnesses commonly feel pressured without the lawyers doing anything improper to pressure them, and this appears to be one of those cases. The witness had been induced by her friend to do something that might upset her employer, probably without doing her friend any good. Such a situation creates pressure, without any lawyer doing anything wrong.

That is all the record supports. The critical word in the magistrate judge's finding that Caples and Hudson "directly or indirectly" caused the witness to make herself unavailable is "indirectly." In this context, the finding is insufficient to support a sanction, because the magistrate judge explained that what he meant by "indirectly" was merely that Caples own emotion of anger made the witness feel the emotion of pressure.

Because there is no finding that Caples intentionally caused the witness to leave, the magistrate judge lacked a plausible basis for the sanction. There is not much to the case but understandable subjective feelings, by Caples and Detrick, that were no one's fault. The attorney is sanctioned not for what he did, but for how a witness, largely because she was about to testify against her employer, felt. There is no finding that Caples intentionally pressured Detrick to make herself unavailable, so there is nothing to which the "clearly erroneous" standard might be applied.